HENRY L. ALDRICH *vs.* ELLIS L. BLAKE & others.

Worcester.    Oct. 9, 1882. — April 6, 1883.    C. ALLEN, COLBURN & HOLMES, JJ., absent.

A. gave a mortgage of real estate to B. and C. to secure them against liability as sureties on a promissory note of even date given by A. to a bank for money lent. It contained a power of sale upon default for breach of the condition, included in which was the payment of the note by the principal to the holder, which power was to be exercised by the mortgagees or the survivor or the executor or administrator of the survivor of them. Afterwards, A., who occupied the mortgaged premises, executed a quitclaim deed of the same to B. and C., who gave a bond to reconvey them, within a time named, upon certain terms and conditions. The quitclaim deed was recorded, but the bond was not, and A. never complied with its terms. The mortgage when made was delivered to the bank, in pursuance of the original agreement between the parties, and was recorded; the loan was then made to A., and the mortgage has since remained in the custody

of the bank. Sales, with warranty, of portions of the mortgaged premises were subsequently made, some of which were assented to by the bank after they were made, and others were previously authorized by the bank, payment of sums satisfactory in amount upon the mortgage being made in all cases, and receipts therefor given by the bank. One half of the amount then due on the note was afterwards paid to the bank by the administrator of C., who survived B., upon the agreement that it was to be "in full payment of claim on said note, provided the balance due on the note be paid by estate of B., or by any one for said estate or for themselves." Such balance was not paid to the bank. A creditor of the residuary devisee of B. filed a bill in equity to have the mortgage declared of no validity and to restrain the administrator of C. from selling the mortgaged premises to satisfy the balance claimed to be due the bank upon the note. C.'s administrator, the residuary devisee of B. and the bank filed a cross bill, asserting the existence of the debt to the bank, the validity of the mortgage, and the right of C.'s administrator to sell the real estate to satisfy the debt still due the bank and to reimburse the sureties for the sums paid by them. It was found as a fact, that, when the quitclaim deed was made by A. to B. and C., it was not intended by the parties to operate as a merger of the mortgage title. *Held*, that the original bill should be dismissed; and that the cross bill could be maintained.

DEVENS, J. This is a bill in equity, filed by a creditor of Allen F. Ballou, the latter being the executor and residuary devisee of Otis D. Ballou. The plaintiff levied an execution on a portion of certain real estate conveyed in mortgage to Otis D. Ballou and Warren J. Ballou by Elias S. Ballou, and seeks to have this mortgage declared of no force and validity, and to restrain the defendant Ellis L. Blake, who is the administrator of the estate of Warren J. Ballou, from selling the real estate to satisfy the balance claimed to be due to the Woonsocket Savings Bank upon a note held by it, on which Otis D. and Warren J. Ballou were sureties, and on which the estate of Warren J. is still liable.

The cross bill, which is filed by the bank, Ellis L. Blake, administrator, and Allen F. Ballou, asserts the present existence of this debt, the validity of the mortgage referred to, and the right of Blake, as administrator, to sell the real estate conveyed, to satisfy so much of the debt as is still due to the bank, and to reimburse the sureties for the sums paid by them heretofore.

On June 18, 1866, Elias S. Ballou executed a mortgage to Otis D. and Warren J. Ballou to secure them as sureties on his note, of the same date, to the bank for $25,000, and also to secure any future advances which the mortgagees might make. It contained a power of sale, upon default, for breach of the condition,

included in which was the payment of the note by the principal to the holder thereof, which power was to be exercised by the mortgagees or the survivor, or the executor or administrator of the survivor of them. As administrator of the surety who survived his co-surety, Blake claims the right to execute the power for the benefit of those beneficially interested under the mortgage, and in order that the estate represented by him may, as between it and the estate of Otis D. Ballou, not be compelled to pay more than its share of the amount due upon the note. The decision as to each bill depends upon the determination of the questions whether the mortgage is held to have been extinguished by reason of the fact that it was merged in the title which Otis D. and Warren J. Ballou obtained under a quitclaim deed subsequently made to them of the premises conveyed by it; and further, whether the note given by Otis D. and Warren J., as sureties for Elias S. Ballou, is to be treated as having been paid and satisfied. In connection with these inquiries, the rights which the bank had in this mortgage security are necessarily to be considered. The levy made by the plaintiff is found to have been by a sale of a portion only of the estate described in the mortgage and covered thereby, and could give no title if the mortgage then legally existed. *Cochran* v. *Goodell*, 131 Mass. 464.

On December 9, 1871, Elias S., who then and for several years thereafter occupied the premises, executed a quitclaim deed of them to Otis D. and Warren J., who gave a bond to reconvey the same within two years upon certain terms and conditions. While the quitclaim deed was recorded, the bond was not, and with its terms Elias S. never complied. Without deciding whether there could have been a merger of titles in view of the bond to reconvey given in 1871, and therefore whether the whole estate, legal and equitable, could be treated as vested in the grantee, merger is not allowed in equity except to promote the actual or presumed intention of the party possessing the two titles. Such intention is often a question of fact, and will not be presumed where it is against the interest of the party. It is found, as a fact, that Otis D. and Warren J. had no intention of merging the title which they held by virtue of the mortgage and that which they obtained by the quitclaim deed.

As between themselves, it was certainly not for their interest that the merger should take place. If their title became absolute and the mortgage was thus destroyed, while each would remain liable for the whole debt, he would be deprived of the full security which the entire property afforded for its payment, as the interest of his co-surety in the real estate might be appropriated by his other creditors. Again, whatever would be the effect of this transaction, were Otis D. and Warren J. the only ones interested in the mortgage, the rights which the bank had therein were such that they could not have merged in another title taken without the assent of the bank, so as to deprive it of the benefit it was entitled to receive therefrom. The mortgage when made was delivered to the bank, in pursuance of the original agreement between the parties, and the loan of $25,000 was then made to Elias S., and the mortgage has ever since remained in the custody of the bank, and been kept on its file of mortgages. The bank was the equitable assignee of the mortgage, which was intended to secure the payment of its debt by indemnifying the sureties. *Strong* v. *Jackson*, 123 Mass. 60. *Morris* v. *Bacon*, 123 Mass. 58.

When so definite and important an interest had been created in the mortgage in favor of the bank, there could be no union of titles which could operate to exclude it by the act of the mortgagor and mortgagees, or their assigns. There was a trust created in its favor as the payee of the note, which was imposed upon the sureties Otis D. and Warren J. Ballou, and they held the mortgaged property subject to this trust. It being clearly expressed in the mortgage, when this was recorded, constructive notice of its existence was given to all, so that attaching creditors, even if they found that there had been a subsequent quitclaim deed of the granted premises to the mortgagees, would be fully informed that they would of necessity hold them subject thereto. A mortgage made by a principal to a surety, to secure the payment of a note, is not to be regarded in equity simply as an indemnity to the surety. It is not important whether it is in form to pay the debt or to indemnify the surety. Where its object is to provide for the payment of debts, or to enable the surety to do so, he is constituted a trustee for the creditors whose debts are enumerated in the condition. An equitable

lien is created in their favor, which is attached to the property
in the hands of the mortgagee, which would follow it in the
hands of his assignee with notice of the trust, and would also
bind it in the hands of the original mortgagor or his assignee
with notice of the trust. *Eastman* v. *Foster*, 8 Met. 19. *Rice*
v. *Dewey*, 13 Gray, 47. *New Bedford Institution for Savings* v.
*Fairhaven Bank*, 9 Allen, 175. *Prout* v. *Root*, 116 Mass. 410.
*Rindge* v. *Sandford*, 117 Mass. 460.

It is suggested that certain sales, with warranty, of portions of
the mortgaged premises were assented to by the bank, and that
therefore it is estopped from denying a merger. Some of these
sales were assented to after they were made, and in others per-
mission was given to transfer and sell certain portions of the
mortgaged property. These various acts of assent were all
accompanied by payment of sums satisfactory in amount upon
the mortgage, and the forms in which the receipts thereof are
expressed show that the existence of the mortgage was fully
asserted as between the bank and the mortgagees. It cannot
be of importance to it that the mortgagees, in making their
deeds, state their title as being in them by virtue of the deed
of Elias S. Ballou. The acts and assertions of the bank con-
stantly maintained its right under and by virtue of the mort-
gage, which was in its hands.

We proceed to consider whether the note has been satisfied
and paid. One half of the amount then due was paid in 1879
by the defendant Blake, as administrator of Warren J. Ballou,
to the bank, upon the agreement that it was to be " in full pay-
ment of claim on said note, provided the balance due on the
note be paid by estate of Otis D. Ballou, or by any one for said
estate or for themselves." It is the contention of the plaintiff
that the bank has accepted from Allen F., the residuary devisee
of Otis D. Ballou, new securities in settlement of and satisfac-
tion for his half; that the defendant Blake can have no interest
in the mortgage, as his liability (or rather that of the estate he
represents) upon the note has ceased; that therefore the bill of
the plaintiff should be maintained, which seeks to remove the
cloud from his title, and the cross bill be dismissed, as there is
no longer any debt due the bank under the mortgage. But
Blake, as administrator, has paid from the private funds of the

estate of Warren J. Ballou one half the amount due on the note when he became administrator; and, if there is no further liability on the part of the estate of Warren J. Ballou to the bank, he is entitled to hold the mortgage for the indemnity of the estate, and to enable him to restore to it that which he has paid therefrom on account of this liability.

The plaintiff fails also to show that there was any settlement with Allen F. Ballou as to his half of the debt. There was a transaction which the master finds was a transfer of a mortgage and stock to the bank as collateral security, and not in payment of the note. These securities the bank still holds, nothing having been paid upon them. Without discussing the evidence, after examining it, we are satisfied that it fully justifies this finding.

The result therefore is, that the original bill is to be dismissed; and that the plaintiffs in the cross bill are entitled to the relief prayed for, by a decree which shall entitle Blake, as administrator of the survivor of the mortgagees, to sell the estate, except those parcels heretofore released by the mortgagees with the consent of the bank, and to apply the proceeds, first to the payment of the amount now due on the note to the bank, and secondly to reimburse Blake, as administrator, for the payments made by him on the note from the private estate of Warren J. Ballou, the remainder, if any, to be held subject to the order of court.

*Decrees accordingly.*

*J. Hopkins*, (*F. N. Thayer* with him,) for the plaintiff.

*F. T. Blackmer*, (*F. G. Jillson* with him,) for the defendants.