HARRIS REALTY CO. *vs.* LENA EPSTEIN and another.

Worcester.    September 26, 1928. — February 28, 1929.

Present: RUGG, C.J., PIERCE, CARROLL, WAIT, & SANDERSON, JJ.

*Equity Jurisdiction*, Specific performance. *Contract*, Performance and breach.

A second mortgage on certain real estate, otherwise of the statutory short form, contained an agreement specified as being binding upon the "heirs, executors, administrators and assigns" of the parties, in substance that the owners of the equity of redemption should have the right to raise a larger first mortgage and "retain . . . the excess of the new first mortgage over the present first mortgage," and that "upon the raising of a larger first mortgage" the holder of the second mortgage temporarily would discharge it for the purpose of allowing the new first mortgage to be placed, and that he would take a new second mortgage "for the amount then due upon the principal of this present second mortgage." An owner of the equity of redemption having procured a new first mortgage of a larger amount, sought by

a bill in equity to compel a holder of the second mortgage to discharge the second mortgage in accordance with the agreement at a time when there was a breach of the second mortgage by reason of unpaid taxes in the amount of $464. A final decree dismissing the bill was entered and the plaintiff appealed. *Held,* that

(1) The plaintiff, while in default as to his obligation to the defendant to pay the taxes, was not entitled as of right to a performance by the defendant of the agreement above described;

(2) It not being provided in the agreement that the increased amount to be realized on the new first mortgage must be used for payment of the taxes, the decree was not erroneous although the plaintiff stated that he intended such use: it still was within the discretion of the court to dismiss the bill.

BILL IN EQUITY for specific performance, filed in the Superior Court on December 21, 1927, described in the opinion.

In the Superior Court, the suit was referred to a master. Material facts found by the master are stated in the opinion.

After a hearing by *Lummus,* J., there were entered by his order an interlocutory decree confirming the master's report and a final decree dismissing the bill. The plaintiff appealed.

*J. H. Reid,* for the plaintiff.

*S. A. Seder,* for the defendants.

RUGG, C.J. The plaintiff by this suit seeks to compel the defendants to discharge a mortgage in which each has an interest on a parcel of land now owned by the plaintiff. The case was referred to a master. No exceptions were taken to his report and it has been confirmed. The facts as found by him must be accepted as true. The parcel of land, at the time of its purchase by the plaintiff and at present, is subject to a first mortgage for $7,000 held by a savings bank and to a second mortgage now securing an indebtedness of $8,100 running to the defendant Epstein and by her assigned to the defendant Jacobs as collateral security for indebtedness from her to him. This indebtedness is substantially smaller than the amount due on the second mortgage. The second mortgage contained this clause: "The owners of the equity of redemption shall have the right to raise a larger first mortgage in some Savings Bank or Trust Company in said Worcester and retain for themselves the excess of the new first mortgage

over the present first mortgage; upon the raising of the larger first mortgage as aforesaid the holder of this mortgage shall temporarily discharge same for the purpose of allowing the placing of the said new first mortgage, and shall then take back a mortgage note for the amount then due upon the principal of this present second mortgage, said mortgage note to be secured by a power of sale second mortgage in the usual form covering said premises, subject to the said new larger first mortgage said mortgage note and said new second mortgage to be payable as to principal and interest in the same manner as this present second mortgage; the owners of the equity of redemption and the holder of this mortgage shall make, execute, acknowledge and deliver any and all instruments necessary to carry out the intention of this covenant; the owners of the equity of redemption shall pay all charges for the change of said mortgages; this covenant shall bind and enure to the benefit of the owners of the equity of redemption and the holder of this mortgage and their heirs, executors, administrators and assigns."

Immediately preceding this suit the plaintiff as the owner of the equity of redemption sought to avail itself of the benefits of this clause. The plaintiff through its treasurer notified the husband of the defendant Lena Epstein (who acted as her agent) that arrangements had been made to obtain a first mortgage from the Bancroft Trust Company for $14,000, which would require Mrs. Epstein to lift her second mortgage. The Bancroft Trust Company was a banking company organized under the laws of this Commonwealth and doing business in Worcester. It conducted a commercial and a savings department and made loans on mortgages from each department. The defendant Epstein refused to do anything in connection with the affair. No demand was made on the defendant Jacobs, the plaintiff not knowing that the second mortgage had been assigned to him. Thereafter the plaintiff executed at the offices of the attorneys of the Bancroft Trust Company a mortgage and note to that company in the sum of $14,000 and the treasurer of the plaintiff recorded that mortgage in the registry of deeds. He caused to be made and left at the office of her attorney a second mort-

gage, described as subject to a prior mortgage for $14,000 to the Bancroft Trust Company, and a note, to the defendant Epstein with certain blanks, expecting there to obtain information to complete these documents and to get a discharge of the Epstein mortgage. Neither the information nor the discharge was furnished. The master further found that, when the present proceedings were instituted on December 21, 1927, "the plaintiff had not paid the taxes for the year 1927 which were due and payable on October 10, 1927, with a period of grace for seventeen days thereafter. These taxes amounted to $464.26. Water bills which were due in October for the premises in question were paid by the plaintiff December 21, 1927. The Epstein mortgage, socalled, was written on the statutory short form and by reference incorporated in the mortgage by force of the statute is the provision by which the mortgagor covenants and agrees to pay all taxes, charges and assessments to whomsoever and whenever laid or assessed, whether on the mortgaged premises or any interest thereon." A decree was entered dismissing the bill, from which the plaintiff appealed.

The plaintiff was bound, in order to obtain the benefits of the Epstein mortgage as to its temporary discharge, to perform all the provisions of that mortgage resting on the mortgagor. One of these was to pay all taxes assessed on the mortgaged premises. This provision was designed to protect the security in the hands of the mortgagee so that it should not be lessened by a lien for overdue taxes. The provision in the Epstein mortgage of which the plaintiff seeks specific performance is not an independent stipulation but it is an essential part of the whole contract set forth in the mortgage. The plaintiff cannot demand as of right the aid of a court of equity to enforce in its own behalf the obligation of the defendants while disregarding the equally binding obligation resting upon it to pay taxes. *Reed* v. *Jones*, 133 Mass. 116, 120, 121. *Hammond* v. *Lovell*, 136 Mass. 184, 186. *Barrell* v. *Britton*, 258 Mass. 383, 386.

The plaintiff contends that the proceeds to be derived from the mortgage given to the Bancroft Trust Company were to be used, not only for the purpose of paying off the prior mort-

gage, the interest and principal payments due under the Epstein mortgage (the amounts of which do not appear), but also the taxes and municipal assessments, and that information of this was conveyed to one or both of the defendants. It cannot be contended that payment of overdue taxes from this source was a part of the mortgage contract. If it be assumed that a decree might be framed to this effect in the exercise of sound discretion, it still is true that specific performance of a contract is not a strict and absolute right and ordinarily will not be granted when the party seeking it has failed in an important particular to perform obligations resting on him arising out of the same contract. See *Forman* v. *Gadouas,* 247 Mass. 207, 211.

*Decree affirmed.*