GEORGE R. BUSKIRK *et al. v.* STATE-PLANTERS BANK & TRUST COMPANY *et al.*

(No. 7578)

Submitted May 11, 1933.  Decided June 6, 1933.

*John E. Jenkins, Brown, Jackson & Knight* and *Herman Bennett,* for appellant.

*Livezey, Hogsett, McNeer & Delaney,* for appellees Buskirk and Switzer.

Woods, Judge:

This is an injunction suit brought on January 14, 1932, by plaintiffs Switzer and Buskirk, as beneficiaries under a junior deed of trust upon certain hotel property, to prevent a sale thereof on January 15, 1932, under the senior deed of trust; to ascertain the liens against the property, their priority, etc; and to have the property sold by the court. All of which was done, priority being given to the unpaid taxes for 1931 and to the taxes for 1929 and 1930 which had been paid by the junior lienor, as first and second liens, respectively. The senior lienor (by assignment), Life Insurance Company of Virginia, appeals from the adjudication of the taxes paid by the junior lienor as a lien prior to its lien.

The senior deed of trust was given to secure money borrowed by the hotel company to pay on its obligations. From recitals in the junior trust deed it appears that Switzer was at one time either the owner of the hotel property or of an interest therein; that "a portion" of the money borrowed under the senior deed of trust went to him on the purchase price of the hotel; and that the remainder due him was secured by the junior trust deed. Both trust deeds were dated the same day, November 5, 1927; but the one in favor of Switzer expressly recognized the other trust deed as senior. Each trust deed contained a covenant that the grantor (the hotel company) should pay all taxes, and in its default the trustee or the lienor could pay them and the amount (of taxes) paid would be added to and become part of the sum secured by the trust deed. Each deed also provided that upon the breach of any of the covenants, the entire debt secured should at once become due and payable, if the lienor should so elect. Taxes upon the encumbered property for 1929 were in default, and on October 18, 1930, the senior lienor notified the hotel company and the junior lienor that unless the taxes were paid by October 25, 1930, the entire debt under the senior deed of trust would be declared due and payable. Switzer paid the taxes on October 22nd and thus disposed of the threat of foreclosure. A similar series of events occurred in 1931, in re-

gard to the 1930 taxes. Switzer testified unequivocally that he paid the taxes each time *to prevent foreclosure by the senior lienor*, saying: "I took it that that (the payment of the taxes) was the only way for me to postpone it (the foreclosure)." He made no reference whatever to a tax sale. Switzer assigned a one-half interest in all his claims against the hotel company to Buskirk. As the sole point at issue is a legal one, further detail seems unnecessary.

The junior lienors contend that they should be subrogated to the lien of the state for the taxes paid by Switzer. The senior lienor admits subrogation is ordinarily accorded to one (not a stranger) paying another's taxes, but contends that under the circumstances here the junior lienors are not entitled to subrogation.

The principle seems to be well established that one possessed of a substantial interest in property who pays taxes thereon for which another is bound, is entitled ordinarily to be subrogated to the right of the taxing power. See *Camden* v. *Coal Co.*, 106 W. Va. 312, 145 S. E. 575, and the extensive note to that case in 61 A. L. R. 587. But the right of subrogation is not an absolute right, which a paying creditor may enforce at will. *Pierson* v. *Haddonfield*, 66 N. J. Eq. 180, 192, 57 A. 471. The right is "a pure equity" and will be recognized only when consonant with right and justice. "Subrogation is founded on equity and benevolence, and is not to be allowed except in a clear case, and where it works no injustice to others." *Wallace Est.*, 59 Pa. 401. Sheldon on Subrogation, section 4; 5 Pomeroy Eq. Juris. (2d) sec. 2349; 60 C. J., on Subrogation, section 18. The right "depends upon the facts and circumstances of each particular case, to which must be applied the principles of justice." 25 R. C. L., on Subrogation, section 2. *N. Y. Co.* v. *F. N. Bank*, 51 Fed. (2d) 485. The right is not thrust on every creditor who pays a debt of his principal, as the right may be relinquished. "The effects of this principle may be controlled by acts of the parties." *Bank* v. *Peter*, 13 Peters, (U. S.) 123. *Henderson etc.* v. *Shillito Co.*, (Ohio) 60 N. E. 295, 298. A second lienor who satisfies a paramount lien against his principal has the option of succeeding to the rights of the superior lien or resorting to his principal directly. And if it appears that at

the time of payment it was the intention of the second lienor to look to the principal, the right of subrogation expires. *Post facto* intention will not revive the right. *Belcher* v. *Wickersham,* 68 Tenn. (9 J. Baxter) 111, 120, 121. The right may be extinguished by contract. *N. Tr. Co.* v. *Cons. El. Co.,* 142 Minn. 132, 138, 171 N. W. 265, and the host of authorities there cited; 60 C. J., *supra,* sec. 7.

Equity will not enforce subrogation ''in the face of a contract that negatives the idea of subrogation.'' *Capen* v. *Garrison,* 193 Mo. 335, 342-3, 92 S. W. 368; Sheldon, *supra,* sec. 41; 25 R. C. L. *supra,* section 9; 60 C. J., *supra,* section 33. An agreement for ''another and different'' security, ''negatives the existence of any agreement for subrogation''. *Taaffe* v. *Tr. Co.,* 275 Fed. 829, 830. When other security has been agreed upon between the debtor and the creditor, equity will not reconstruct the contract. ''Where the party has carved out his own security the law will not create another in aid.'' *Brown* v. *Gilman,* 1 Mason 190, 214. The opinion in that case was written by Justice Story when he was on the circuit bench. It was appealed to the Supreme Court of the United States and that principle was reiterated by Chief Justice Marshall. See *Gilman* v. *Brown,* 4 Wheat. 255, 291. Accord: 5 Pomeroy, *supra,* sec. 2350. Subrogation cannot ''be invoked to override and displace the real contract of the parties''. *Trust Co.* v. *Peters,* 72 Miss. 1058, 1070, 18 So. 497.

It may be admitted that in case of payments (such as the ones in question) a natural presumption would arise in favor of subrogation. But a presumption subsides when there is evidence of an intention to the contrary. See *Dwight* v. *Hazlett,* 107 W. Va. 192, 147 S. E. 877 (pt. 10, syl). In the instant suit the junior lienor expressly agreed that in case he should pay the taxes ''the amount so paid therefor shall be secured by this deed of trust, for which he shall have the right to collect by sale hereunder.'' The plain effect of this agreement is that whatever amount of taxes was advanced by the junior lienor should be treated *as a loan to the hotel company* and be secured by the second deed of trust. Support of this construction would seem hardly necessary, but we quote from the case of *Hockett* v. *Burns,* (Neb.) 132 N. W. 718, containing an agreement similar to the one here, of which the court

said: "The clause permitting plaintiff to pay the taxes simply conferred an option upon him to do so if he so desired, *provided he was willing to increase the amount of his investment in the security to that extent.*" It is argued that the agreement to add the taxes to the amount due under the deed of trust is not an exclusive remedy. If the agreement is not restrictive, what possible purpose does it serve? Without the agreement, the junior lienor, as payor of the taxes, could have commanded an absolute security—the paramount lien of the taxing power. By virtue of the agreement he would command only an uncertain security—a junior lien. The agreement added nothing whatever to the right of subrogation; so why provide by contract for indemnity if subrogation was contemplated? The word "shall" in the agreement, except when used to denote futurity, is defined as meaning "must", and is therefore exclusive. Furthermore, there is a hoary rule of construction, *Expressio unius est exclusio alterius* (The expression of one thing is the exclusion of another). If we apply that rule, then we must treat the agreement as at least *prima facie evidence of the exclusion of subrogation.* If we concede for the sake of argument that there is doubt as to intention to waive subrogation, the position of the plaintiffs would not be improved because *subrogation is not applied in cases of doubt.* "The burden is always on one who claims this equity to show that he is entitled to it." Sheldon, *supra,* sec. 11. "To entitle a party to subrogation his equity must be strong and his case clear." Story Eq. Juris. (14th Ed.), sec. 707. Accord: 25 R. C. L., *supra,* sec. 4; *Knouf's Appeal,* 91 Pa. 78; *Royal Arc.* v. *Cornelius,* 198 Pa. 46, 47 A. 1124; *Citizens Tr. Co.* v. *Prescott,* 227 N. Y. S. 514; *U. S. F. & G. Co.* v. *Bramwell,* (Ore.) 32 A. L. R. 829, 217 P. 332; *Northern Tr. Co.* v. *Cons. Co.,* (Minn.) 4 A. L. R. 510, 171 N. W. 265; *Maryland Tr. Co.* v. *Poffenberger,* (Md.) 62 A. L. R. 546, 144 A. 249; *Bingham* v. *Walker,* (Utah) 283 Pac. 1055; *In re Whitney's Est.,* (Cal.) 11 P. (2d) 1107. This rule assuredly should be applied when the creditor has himself raised the doubt, as in this instance, by agreeing to take security other than subrogation.

Furthermore, there is a countervailing equity here in favor of the first lienor, arising from the conduct of Switzer. The two trust deeds are so connected as to be regarded as one

transaction. What construction would the senior lienor naturally place on the clause as to the payment of taxes except that the clause restricted the junior lienor to the security of the junior trust deed? The demand of the senior lienor that the taxes be paid was for the obvious purpose of having that paramount obligation extinguished. Had Switzer intimated when he paid the taxes that he was claiming the benefit of the tax lien, he would have precipitated instead of prevented the foreclosure. That the senior lienor exacted payment of the taxes and then abandoned foreclosure each time after the taxes were paid demonstrates its construction of the clause. That Switzer paid the taxes both in 1930 and 1931, not to avert an imminent tax sale, but for the express purpose of "postponing" the foreclosure and treated the tax lien as extinguished until his suit was brought in 1932, implies that he temporarily accepted the construction of the first lienor. So the practical construction of the clause by the parties concurs with its theoretical construction. An injustice would be worked on the senior lienor to permit Switzer to repudiate that construction now. In the case of *Pearmain* v. *Life Ins. Co.*, 206 Mass. 377, 92 N. E. 497, 498, the junior lienor paid the taxes under conditions similar to those of the instant suit. There was no specific agreement in the *Pearmain* case that if the junior lienor paid the taxes he should look to the security of his junior lien. Yet, the Supreme Court of Massachusetts denied the junior lienor subrogation, saying: "* * * the plaintiff paid the taxes, not for the purpose of preventing a sale by the collector of taxes, but for the purpose of preventing the defendant from foreclosing its mortgage under the power contained in its mortgage. * * * Such payment by a junior mortgagee merely to protect himself from the foreclosure of an earlier mortgage extinguishes the lien for taxes as between the two mortgagees."

The judgment of the circuit court is accordingly reversed in so far as it advances the amount of taxes paid by plaintiffs beyond the security of the junior deed of trust.

*Reversed in part and remanded.*